UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-22774-CIV-HUCK/SIMONTON

SERVICIOS DE ALMACEN FISCAL
ZONA FRANCA Y MANDATOS S.A.,
a/k/a S.A.F., S.A..,

    Plaintiff,
vs.

RYDER INTERNATIONAL, INC.,

    Defendant.
_____/

**ORDER ON DEFENDANT RYDER INTERNATIONAL, INC.'S MOTION TO DISMISS**

    This cause is before the Court on Defendant Ryder International, Inc.'s ("Ryder") Motion to Dismiss, filed January 8, 2007 (DE #14).  The Court has considered the Motion, Plaintiff, Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A. a/k/a S.A.F., S.A.'s ("SAF") Response thereto and Defendant's Reply in further support thereof. Additionally, the Court heard oral argument on the Motion at a hearing held on February 15, 2007.  The Court is duly advised in the premises.

**BACKGROUND**

    On November 13, 2006, SAF filed this lawsuit against Ryder, for the later's alleged failure to perform its obligations under a purported joint venture agreement embodied by two separate Spanish language documents attached to the Complaint as Exhibits "A" and "B."  SAF alleges that the "Confidentiality and Work Development Agreement" dated March 23, 1995 (Ex. "A" to the Compl.) and the "Supplementary Agreement" dated December 19, 1995 (Ex. "B" to the Compl.) created a binding joint venture agreement between the parties, under which Ryder and SAF would jointly pursue the business of potential clients and provide logistical and transportation services in Argentina and elsewhere in South America.  The documents identify specific potential clients and also describe, in general terms, the respective services that SAF and Ryder could potentially provide to them.

-1-

According to SAF, "sometime after 1995," Ryder, through affiliated entities, provided services contemplated by the subject documents to certain automotive clients in Argentina, without SAF's participation or consent. (Compl. At ¶27). Based on Ryder's unilateral undertaking of services for those clients which are identified in the subject documents and in the Complaint, SAF asserts claims for breach of contract (Claim I), usurpation of business opportunity (Claim II), and constructive trust (Claim III). Ryder moves to dismiss SAF's breach of contract claim because, in its view, the subject documents failed to establish a binding joint venture agreement and, even if they did, the claim is barred by the statute of limitations. Ryder moves to dismiss SAF's claim for usurpation of business opportunities because neither the documents attached to the Complaint nor the allegations set forth therein give rise to a fiduciary duty on Ryder's part. Ryder further argues that if the Court dismisses SAF's claim for usurpartion, it must also dismiss SAF's claim for the imposition of constructive trust.

## STANDARD ON A MOTION TO DISMISS

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994)(*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hummings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Systems, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)(citations omitted); *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1983). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion V v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994)(citations omitted). Nevertheless, to survive a motion to dismiss, plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action,

dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). With the foregoing standard in mind, the Court addresses Ryder's Motion to Dismiss.

## ANALYSIS
### Claim I – Breach of Contract

Ryder first argues that SAF's breach of contract claim fails because the purported joint venture agreement is unenforceable as a matter of law. The Court agrees. "Under Florida law, a joint venture is defined as 'a special combination of two or more persons, who, in some specific venture, seek a profit jointly without the existence between them of any actual partnership, corporation, or other business entity.'" *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990)(citing *Florida Tomoato Packers, Inc. v. Wilson*, 296 So.2d 536, 539 (Fla. 3d DCA 1974). In addition to the existence of an express or implied contract, the following are essential elements of a joint venture agreement: (1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained. *Id*.(citing *Kislak v. Kreedian,* 95 So.2d 510, 514 (Fla.1957).

Thus, the threshold question for the Court is whether the documents attached to the Complaint created an express contract under Florida law. As the Third District Court of Appeals recently stated,

> [t]he creation of a contract requires that there be a mutual or reciprocal assent to a certain and definite proposition, which is commonly referred to as a "meeting of the minds." *Hewitt v. Price,* 222 So.2d 247 (Fla. 3d DCA 1969). There is no meeting of the minds between the parties when essential terms are left open for consideration or negotiation. *Webster Lumber Co. v. Lincoln,* 94 Fla. 1097, 115 So. 498, 502 (1927). Thus, to create a contract and trigger contractual obligations, the parties must have a definite and distinct understanding, without which there is no assent and no contract. *Webster Lumber Co. v. Lincoln* []*; Enid Corp. v. Mills,* 101 So.2d 906 (Fla. 3d DCA 1958).

*Glosser v. Vasquez*, 898 So.2d 1179, 1181 (Fla. 3d DCA 2005). As noted above, the essential terms of a joint venture agreement include, among others, a right to share in the profits and a duty to share in any losses which may be sustained. *Kislak*, 95 So.2d at 514. The documents at issue here are

completely silent as to these essential terms. Instead, the "Confidentiality and Work Development Agreement" expressly leaves the distribution of profits and losses, among other essential terms, open for negotiation by stating that "[o]nce conversations with possible customers are underway, and before signing contracts with such possible customers, Ryder and SAF shall execute an agreement opening relations between them for each customer." (Compl., Ex. "A" at "FIFTH" paragraph). The next paragraph of the document again contemplates the need for additional negotiation of the terms to be incorporated in "[w]hichever final form the agreement between Ryder and SAF may assume . . ." (Compl., Ex. "A" at "SIXTH" paragraph). The foregoing language reflects the absence of any final terms concerning the rights and responsibilities of Ryder and SAF with respect to potential clients, not the least of which is how profits or losses generated from such clients will be shared by SAF and Ryder. Although the "Supplementary Agreement" provides some additional general information concerning the respective types of services SAF and Ryder would provide to specific potential clients, it too fails to address the essential issues, among others, relating to any future joint efforts to provide services and of how profits or losses would be shared by the companies in the event that a potential client relationship were to materialize. Accordingly, there was no meeting of the minds between SAF and Ryder as to all of the essential elements of an enforceable joint venture agreement.

At most, the subject documents constitute an agreement to agree in the future, which Florida courts have uniformly refused to enforce. *See, e.g, John Alden Life Ins. Co. v. Benefits Management Associates, Inc*., 675 So.2d 188 (Fla. 3d DCA 1996)(refusing to enforce a contractual term which provided for a bonus to be negotiated by parties in the future); *May v. Sessums & Mason, P.A.*, 700 So.2d 22 (Fla. 2d DCA 1997)(refusing to enforce a provision in a law firm's retainer agreement which called for an "additional" fee at the end of the client's divorce action if "requested" by the law firm and as determined after "discussion and agreement" of the parties). *See also Cohen v. Amerifirst Bank*, 537 So.2d 1108 (Fla. 3d DCA 1989)("Statements of future intentions, or an agreement to agree in the future, do not give rise to an enforceable contract."); *Spanish Broadcasting System of Florida, Inc. v. Alfonso,* 689 So.2d 1092 (Fla. 3d DCA 1997)(recognizing unenforceability of agreements to agree, especially where purported agreement omits essential terms and contemplates further negotiations). The documents at issue here are replete with language that contemplates the need for future agreements without specifying the essential terms thereof. The "Confidentiality and

Work Development Agreement", for example, provides that "the parties *agree to be willing* to jointly offer . . . services." (Compl., Ex. "A" at "FOURTH" paragraph). It further provides that "[j]oint conversations *will be had* for this purpose . . ." As quoted above, the "FIFTH" and "SIXTH" paragraphs expressly acknowledge the need for a future contract "opening relations" between SAF and Ryder with respect to each potential client and the absence of a "final form" of agreement between the parties. The "Supplementary Agreement" similarly recognizes the tentative nature of the proposed relationship between the parties. Accordingly, SAF's breach of contract claim fails as a matter of law.

SAF's breach of contract claim is also time-barred, as it is based on a breach which occurred more than five years prior to the filing of this action. *See* § 95.031(1), Florida Statutes. The five-year statute of limitations period commences once the last element for breach of contract occurs, not when a plaintiff discovers the breach. *See Abbott Lab., Inc. v. Gen. Elec. Capital*, 765 So.2d 737, 740 (Fla. 5th DCA 2000)("the legislature did not intend to provide a discovery rule in section 95.11(2)(b), Florida Statutes (1981) . . . [t]o conclude otherwise would require us to write into section 95.11(2)(b), Florida Statutes[], a discovery rule when the legislature has not"). Notwithstanding SAF's argument to the contrary, a subsequent breach or a series of breaches does not give rise to a new or indefinite limitations period. While not directly on point, *Korman v. Iglesias*, 825 F.Supp. 1010 (S.D. Fla. 1993), is instructive. In *Korman*, the Honorable Judge Federico Moreno of this District Court found that a plaintiff's civil theft claim for wrongful deprivation of song royalties was time-barred because the statute of limitations applicable to the claim accrued when the plaintiff first failed to receive royalties to which she was entitled. Like SAF here, the plaintiff in *Korman* had argued that her claim was timely as long as new royalties accrued. *Id*. Although the Complaint here only vaguely describes Ryder's breach as having occurred "sometime after 1995," SAF admitted in its Response to Ryder's Motion to Dismiss and in open court that the purported joint venture agreement was first breached no later than July 24, 2001. *See* Opp. Memo., at Ex. 1. SAF filed its Complaint in this action on November 13, 2006. Accordingly, the claim is barred by Florida's statute of limitations.

### Claim II – Usurpation of Business Opportunity

SAF's second claim is that Ryder breached a fiduciary duty it owed to SAF by usurping SAF's business opportunities and performing logistical and other services to companies in Argentina and elsewhere in South America. According to SAF, Ryder's fiduciary duty arose out of the joint venture reflected in the "Confidentiality and Work Development Agreement" and the "Supplementary Agreement" discussed above. (Compl. At ¶19). Ryder argues that since there was no joint venture there was no resulting fiduciary relationship. In addition, Ryder argues that even if a joint venture as described by SAF existed, it would not have created a fiduciary relationship between Ryder and SAF. Finally, Ryder argues that even if it did owe a fiduciary duty to SAF under to the purported contracts, SAF's claim for breach of that duty would be barred by Florida's economic loss rule.

"A fiduciary relationship is based on trust and confidence between the parties where 'confidence is reposed by one party and a trust accepted by the other . . .'" *Taylor Woodrow Homes Fla., Inc. V. 4/46-A Corp.*, 850 So.2d 536, 540 (Fla. 5th DCA 2003)(quoting *Quinn v. Phillips*, 93 Fla. 805, 113 So. 419, 421 (1927)). Such a relationship may arise from an express contract or may be implied in law. *See Id.* Here, as noted above, SAF claims that Ryder's fiduciary duty arose expressly from the purported joint venture represented by the documents attached to the Complaint. Because there was no joint venture, there was no fiduciary duty. However, even assuming that the documents constituted an enforceable agreement, nothing in the agreement makes Ryder a fiduciary of SAF. Nothing in the purported agreement indicates a placement of SAF's confidence in Ryder and/or Ryder's acceptance of SAF's trust. Nor do facts alleged in the Complaint establish that SAF was a weaker party and dependant on Ryder to advise, counsel or protect it. *See Watkins v. NCNB Nat. Bank of Florida, N.A.*, 622 So.2d 1063, 1065 (Fla. 3d DCA 1993)(quoting *Bankest Imports, Inc. v. Isca Corp.*, 717 F.Supp. 1537, 1541 (S.D.Fla. 1989)("To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party"). As a general matter, "[w]hen parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *Taylor Woodrow Homes*, 850 So.2d at 541. Because the Complaint fails to establish that Ryder owed SAF a fiduciary duty, Claim II fails as a matter of

law and must be dismissed.[1]

### Claim III – Constructive Trust

Ryder also moves to dismiss SAF's claim for imposition of a constructive trust. SAF's claim for constructive trust is based on Ryder's alleged usurpation of SAF's business opportunities related to the joint venture. In view of the Court's rulings discussed above, dismissal of SAF's claim for imposition of constructive trust is also appropriate.

### CONCLUSION

For all the foregoing reasons, it is hereby

ORDERED that Ryder's Motion to Dismiss is GRANTED as set forth above. The Complaint is DISMISSED. In its supplemental Memorandum of Law In Opposition to Statute of Limitations Defense, filed subsequent to oral argument, SAF requests that if the Court grants Ryder's Motion to Dismiss, that SAF be allowed to file an amended complaint to assert additional claims. That request is GRANTED. SAF may file an amended complaint on or before March 8, 2007.

DONE and ORDERED in Chambers, Miami, Florida, this 26th day of February, 2007

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record

---

[1] Having determined that neither the purported joint venture agreement nor the facts alleged in the Complaint give rise to a fiduciary duty on Ryder's part, it is unnecessary to consider Ryder's argument that SAF's claim of usurpation of business opportunities is barred by Florida's economic loss rule. Nevertheless, it appears that SAF's tort claim may indeed be barred by the economic loss rule since the alleged fiduciary duty upon which it is based is expressly alleged to have arisen from a contract between the parties. *See Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F.Supp.2d 1310, 1316 (S.D.Fla. 2002)("a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties . . . This is true because the duty is owed only as a result of the existence of the contract"). *See also Florida College of Osteopathic Medicine v. Dean Witter Reynolds, Inc.*, 982 F.Supp.862 (M.D. Fla. 1997)(applying the economic loss rule to bar a plaintiff's tort claims for fraud and negligent misrepresentation even though the contract with which those claims were "interwoven" was found to violate the statute of frauds).

-8-

-8-